## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

SUSAN HARRIS-AYLWARD,

       Plaintiff,

vs.                                                           No.  06cv0650 DJS

MICHAEL J. ASTRUE,[1]
COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff's (Aylward's) Motion to Reverse or Remand Administrative Agency Decision [**Doc. No. 7**], filed November 7, 2006, and fully briefed on December 21, 2006.  On January 27, 2006, the Commissioner of Social Security issued a final decision denying Aylward's claim for disability insurance benefits.  Aylward seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).  Having considered the arguments, pleadings, administrative record, relevant law, and being otherwise fully informed, the Court finds that the motion to remand is well taken and will be **GRANTED**.

### I.  Factual and Procedural Background

Aylward, now forty-eight years old (D.O.B. July 30, 1958), protectively filed her application for disability insurance benefits on October 7, 2002 (Tr. 21), alleging disability since June 13, 2002 (Tr. 54), due to fibromyalgia, widespread musculoskeletal pain, ear and jaw pain,

---

[1] On February 1, 2007, Michael J. Astrue became the Commissioner of Social Security.  In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Mr. Astrue is substituted for Jo Anne B. Barnhart as the defendant in this action.

fatigue, heart palpitations, insomnia, depression, and anxiety (Tr. 60, 86).  Aylward has two years

of college (Tr. 66) and past relevant work as a programmer analyst (Tr. 61).  On January 27,

2006, the Commissioner's Administrative Law Judge (ALJ) denied benefits, finding Aylward was

not disabled as she retained the "residual functional capacity compatible with the performance of

light work."  Tr. 23.  The ALJ also found Aylward's testimony regarding her limitations not

"entirely credible."  Tr. 24.  Aylward filed a Request for Review of the decision by the Appeals

Council.  On March 23, 2006, the Appeals Council denied Aylward's request for review of the

ALJ's decision.  Tr. 6.  Hence, the decision of the ALJ became the final decision of the

Commissioner for judicial review purposes.  Aylward seeks judicial review of the Commissioner's

final decision pursuant to 42 U.S.C. § 405(g).

## II.  Standard of Review

The standard of review in this Social Security appeal is whether the Commissioner's final

decision is supported by substantial evidence and whether he applied correct legal standards.

*Hamilton v. Secretary of Health and Human Servs.,* 961 F.2d 1495, 1497-98 (10th Cir. 1992).

Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion. *Glass v. Shalala*, 43 F.3d 1392, 1395

(10th Cir. 1994).  "Evidence is not substantial if it is overwhelmed by other evidence in the record

or constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).

Moreover, "all of the ALJ's required findings must be supported by substantial evidence,"

*Haddock v. Apfel,* 196 F.3d 1084, 1088 (10th Cir. 1999), and all of the relevant medical evidence

of record must be considered in making those findings, *see Baker v. Bowen*, 886 F.2d 289, 291

(10th Cir. 1989).  "[I]n addition to discussing the evidence supporting her decision, the ALJ must

discuss the uncontroverted evidence she chooses not to rely upon, as well as significantly probative evidence she rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996). Therefore, while the Court does not reweigh the evidence or try the issues de novo, *see Sisco v. United States Dep't of Health & Human Servs.*, 10 F.3d 739, 741 (10th Cir. 1993), the Court must meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings, in order to determine if the substantiality test has been met. *See Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).

### III.  Discussion

In order to qualify for disability insurance benefits or supplemental security income, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity. *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993)(citing 42 U.S.C. §423(d)(1)(A)).  The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. 20 C.F.R. § 404.1520 (a-f).  The sequential evaluation process ends if, at any step, the Commissioner finds the claimant is not disabled. *Thompson*, 987 F.2d at 1487.

At the first four levels of the sequential evaluation process, the claimant must show she is not engaged in substantial gainful employment, she has an impairment or combination of impairments severe enough to limit her ability to do basic work activities, and her impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1, or she is unable to perform work she had done in the past. 20 C.F.R. §§ 404.1520 and 416.920.  At the fifth step of the evaluation, the burden of proof shifts to

the Commissioner to show the claimant is able to perform other substantial gainful activity considering her residual functional capacity, age, education, and prior work experience. *Id.*

In support of her motion to reverse and remand, Aylward makes the following arguments: (1) the ALJ's RFC finding is not supported by substantial evidence; and (2) the ALJ erred in conclusively applying the Medical Vocational Guidelines (the grids).

## A.  RFC Determination

Residual functional capacity is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirement of jobs."  20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(c).  In arriving at an RFC, agency rulings require an ALJ to provide a "narrative discussion describing how the evidence supports" his or her conclusion.  *See* SSR 96-8p, 1996 WL 374184, at *7.  The ALJ must "discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis . . . and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record."  *Id.*  The ALJ must also explain how "any material inconsistencies or ambiguities in the case record were considered and resolved."  *Id.*  "The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence."  *Id.*

Aylward contends "[t]he ALJ engaged in a selective review of the record, misunderstood the nature of fibromyalgia, and assessed treating physician evidence using incorrect legal standards."  Pl.'s Mem. in Support of Mot. to Reverse at 18.  According to Aylward, in determining her physical RFC, the ALJ: (1) failed to properly consider the effects of her

4

fibromyalgia; (2) failed to consider all of her impairments in assessing her RFC, specifically, her severe scapular disorder, TMJ, tinnitus, ear pain, heart palpitations, anemia, syncope, and hypotension; (3) applied incorrect legal standards in rejecting Dr. Gollub's RFC; (4) failed to give legitimate reasons for rejecting Dr. Schwartz' opinions; (5) erred in giving primary weight to the findings of the consultative agency physician; and (6) failed to explain the effects of her symptoms on her ability to work.

As to her mental RFC, Aylward contends the ALJ's finding that she can perform work involving no more than one and two-step job instructions is "internally inconsistent and defies meaningful judicial review." Pl.'s Mem. in Support of Mot. to Reverse at 21. Aylward claims the ALJ "alternately found [her] depression and anxiety to be severe and non-severe impairments." *Id.* Additionally, Aylward claims the ALJ "found that the same basic mental activities of work were both mildly and moderately limited" and "failed to mention [her] OCD, an impairment diagnosed by Dr. Reich." *Id.* Finally, Aylward complains the ALJ "did not give legitimate reasons for affording limited weight to Dr. Reich's statements that [she] was unable to work at her prior job, and that no other work would allow for adequate accommodations." *Id.* at 22.

**1) Physical RFC**

In her decision, the ALJ noted:

> The claimant was diagnosed with fibromyalgia in 2001 (Exhibit 5F, pp. 31-32), and she testified that she experiences seriously limiting pain. She said she often lies down four hours a day and otherwise described a largely impoverished lifestyle. I find, however, that while the claimant's medically determinable impairments could reasonably be expected to produce some of the symptoms as alleged, for the most part, the claimant's statements are not supported by objective evidence or clinical findings and are not entirely credible.

Tr. 24. The ALJ also relied on the following statement to find Aylward not entirely credible:

"Finally, the record indicates that some of the claimant's difficulties are transitory and reactive in

nature, and in general, neither as persistent nor as limiting as the claimant alleges."  Tr. 24.

However, the ALJ cited to no medical evidence to support this conclusion.  Plaintiff also

complains the ALJ failed to properly consider the effects of her fibromyalgia.  The Court agrees.

First, a claimant's "statements about the intensity and persistence of pain or other

symptoms or about the effect the symptoms have on his or her ability to work may not be

disregarded solely because they are not substantiated by objective medical evidence."  SSR 96-7P,

1996 WL 374186, at *1.  Second, under the agency's applicable regulation:

> It is not sufficient for the adjudicator to make a single, conclusory statement that "the
> individual's allegations have been considered" or that "the allegations are (or are not)
> credible." It is also not enough for the adjudicator simply to recite the factors that are
> described in the regulations for evaluating symptoms. The determination or decision must
> contain specific reasons for the finding on credibility, supported by the evidence in the case
> record, and must be sufficiently specific to make clear to the individual and to any
> subsequent reviewers the weight the adjudicator gave to the individual's statements
> and the reasons for that weight.

S.S.R. 96-7p, 1996 WL 374186, at *2.  Additionally, in *Brown v. Barnhart*, 182 Fed.Appx. 771

(10th Cir. 2006)(unpublished), the Tenth Circuit noted:

> Fibromyalgia, previously called fibrositis, is "a rheumatic disease that causes inflammation
> of the fibrous connective tissue components of muscles, tendons, ligaments and other tissues."
> It is a chronic condition, causing "long-term but variable levels of muscle and joint pain,
> stiffness and fatigue.  The disease is "poorly-understood within much of the medical
> community [and] . . . is diagnosed entirely on the basis of patients' reports and other
> symptoms."  Clinical signs and symptoms supporting a diagnosis of fibromyalgia under the
> American College of Rheumatology Guidelines include "primarily widespread pain in all four
> quadrants of the body and at least 11 of the 18 specified tender points on the body."
> Fibroymyalgia can be disabling.
>
> What makes fibromyalgia difficult to analyze in the social security disability context is the
> lack of objective symptoms:
>
> Its cause or causes are unknown, there is no cure, and, of greatest importance to disability
> law, its symptoms are entirely subjective.  There are no laboratory tests for the presence or
> severity of fibromyalgia.  The principal symptoms are pain all over, fatigue, disturbed sleep,
> stiffness, and– the only symptom that discriminates between it and other diseases of a
> rheumatic character– multiple tender spots, more precisely 18 fixed locations on the body (and

the rule of thumb is that the patient must have at least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the patient to flinch.

*Id.* at  *2 n.1(emphasis added).

In addressing Aylward's fibromyalgia, the ALJ cited to the examinations of Drs. Schwartz and Gollub, Aylward's treating physicians.  The ALJ afforded Dr. Schwartz' opinion "less evidentiary weight" than the weight she afforded the agency consultant's opinion regarding Aylward's fibromyalgia because Dr. Schwartz' opinion "[was] not supported by objective evidence."  Tr. 24.  As to Dr. Gollub's opinion, the ALJ afforded it "no evidentiary weight" because "it [was] not supported by clinical findings or objective evidence."  Tr. 25.

Having rejected Aylward's treating physicians' opinions, the ALJ "afford[ed] considerable weight" to the opinion of Dr. W. Ryan, the agency consultant who examined Aylward once.  Tr. 24.  Dr. Ryan, an internist evaluated Aylward on June 4, 2003.  Tr. 255-257.  Dr. Ryan noted in pertinent part:

> On exam of the musculoskeletal system, the back has some loss of normal thoracic kyphosis and lumbar lordosis.  Anterior flexion is 70 degrees, lateral 25 degrees to each side. Shoulders, elbows, wrists and hands are anatomically and functionally normal.  No evidence of inflammatory arthritis.  Hips have full ROM, no limitation or deformity.  Knees, ankles and feet are anatomically and functionally normal.

> Cognitive is excellent.

> There is no evidence of psychiatric issues or disease.  Full range of affect and engagement with the environment and appropriateness are all reasonable.

> ASSESSMENT:         Unfortunate young woman who seems overwhelmed by her diagnoses.

> Certainly my prejudice is to encourage her to try to get better and deal with them and carry on with her life.  I think that is more of an editorial comment than relevant to the exam.

> On physical exam she does have some minor abnormalities of her spine.  Everything else appears pretty normal.

Tr. 256-257.  The Court notes that Dr. Ryan failed to check for the 18 tender (trigger) points found in individuals suffering with fibromyalgia.  Additionally, the ALJ explained that she afforded Dr. Ryan's opinion "considerable evidentiary weight" because it was "supported by clinical findings and consistent with the record as a whole."   Because the ALJ misunderstood fibromyalgia she came to this conclusion.  However, this finding is not supported by the record. As noted above, clinical signs and symptoms supporting a diagnosis of fibromyalgia include primarily widespread pain in all four quadrants of the body and at least 11 of the 18 specified trigger points on the body.  In this case, Aylward's treating sources documented 11 or more trigger points on examination on several occasions.  *See e.g.*, Tr. 139 (Anne Carpentar, CNP– Tender Point Exam: Control points are #3 at 1+.  Tender points: there are #12 points at 2+, #4 points at 3+, and #6 points at 1+.); Tr. 179 (Dr. Gollub– Objective: Still has trigger point tenderness.); Tr. 194 (Dr. Gollub–  Objective: She's diffusely tender over the cervical para spinous musculature, trapezias areas, rhomboids and at the typical trigger points in the lower extremities as well.); Tr. 259 (Dr. Gollub– Objective: She's diffusely tender, not just in the trigger points, but elsewhere over muscle groups.); Tr. 260 (Dr. Gollub– Objective: She's diffusely tender over the cervical para spinous musculature, trapezias areas, rhomboids and at the typical trigger points in the lower extremities as well.); Tr. 294 (Dr. Schwartz– Physical examination: She has multiple areas of tenderness consistent with fibromyalgia.); Tr. 299 (Dr. Gollub– Fibromyalgia Residual Functional Capacity Questionnaire: Trigger point tenderness, diffuse paraspinous tenderness); Tr. 332 (Dr. Gollub– Objective: All her trigger points are positive.).

On remand the ALJ should reassess Aylward's functional limitations due to fibromyalgia and redetermine Aylward's RFC.  *See Gardner-Renfro v. Apfel*, 242 F.3d 388, 2000 WL

1846220 , *3 (10th Cir. 2000)(unpublished) ("[T]he operative question for disability benefits under the Act is whether plaintiff experiences <u>functional limitations</u> due to her impairment.").  On remand the ALJ should also reconsider the weight she afforded Dr. Ryan's opinion, reevaluate the weight she afforded to the opinions of Drs. Gollub and Schwartz in accordance with 20 C.F.R. § 404.1527(d)(2) and *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir.2003), and reconsider Dr. Gollub's Fibromyalgia Residual Functional Capacity Questionnaire.

Finally, at step-four even nonsevere impairments should be taken into consideration in combination with any severe impairments.  *See* Soc.Sec.Rul. 96-8p, 1996 WL 374184, at *5 ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are 'not severe.'  While a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may– when considered with limitations or restrictions due to other impairments– be critical to the outcome of a claim.").  Accordingly, in redetermining Aylward's RFC, the ALJ should consider Aylward's scapular disorder, TMJ, tinnitus, ear pain, heart palpitations, anemia, and hypotension.

## 2)  Mental RFC

In her decision, the ALJ found:

> Having considered the record in its entirety, I find the claimant is otherwise able to respond appropriately to supervisors, co-workers and the general public, is able to maintain the concentration, persistence and pace required of competitive, remunerative employment, is able to adapt to usual changes in the work environment, and is able to use judgment in a work setting.  She is able to understand, carry out and remember one and two-step job instructions and she is able to adhere to a regular and continuing schedule.  <u>The claimant has never experienced an episode of decompensation and is highly unlikely to decompensate if placed in a work environment</u>.

Tr. 26 (emphasis added).  According to the medical record, Aylward suffered an episode of

decompensation on June 13, 2002.  Tr. 144.  On June 24, 2002, Anne M. Carpenter, C.N.P., noted:

> Susan called 6/13/02, very concerned about an interaction that she had at work.  Apparently
> her supervisors were quite negative about the performance at work of her particular group,
> including the patient.  Patient later approached these same supervisors, asking specifically if
> they had specific concerns regarding her.  Apparently they did.  Patient left work quite
> distraught and hasn't been able to return. [ . . . ] She comes in today quite tearful, doesn't feel
> any better since the 6/13 incident at work.  In fact, she feels worse physically and
> emotionally.

Tr. 144 (emphasis added).  Ms. Carpenter assessed Aylward as having "Fibromyalgia flare,

associated with a conflict at work and increased symptoms of anxiety and depression, also

associated with this conflict at work."  Tr. 145.  Ms. Carpenter opined:

> I believe she is experiencing an adjustment disorder with mixed emotional features associated
> with this incident at work, and I believe that this has exacerbated her fibromyalgia, moving
> her into a flare, as well as worsening signs and symptoms of anxiety which she was displaying
> prior to this incident. At this point, I believe we need to get a better control over the
> fibromyalgia flare as well as her psychological presentation today, and for this reason I am
> suggesting a release from work until I am able to re-evaluate her in 2 weeks.

Tr. 146.  The ALJ also afforded Dr. Reich's opinion "limited weight."  Tr. 26.  The ALJ noted:

> Dr. B. Reich, the claimant's treating psychiatrist has provided two statements to the
> claimant's disability insurer indicating (a) the claimant was unable to work at her prior job
> and (b) no other work would allow for sufficient accommodations (Exhibits 28F, entered post
> hearing; 26F).  However, I afford these opinions only limited weight.  First, these statements,
> while guaranteeing continued payment of the claimant's insurance coverage, are not consistent
> with the balance of the evidence.   Dr. Reich indicates the claimant has experienced
> "psychiatric symptoms" since childhood, yet the claimant was able to complete an Associate
> Degree in computer science, raise two children to teen-age years, and live and work
> productively over a period of many years.  Dr. Reich identifies no reason, sign or symptom
> why the claimant's condition has changed or worsened.  Dr. Reich also states not only that the
> claimant is treated primarily with medication, but also that she meets with the claimant "about
> every three months" (Exhibit 28 F, p.1), presumably for the renewal of prescriptions, but in
> any event, at intervals not indicative of a severely comprised mental state.  Secondly, Dr.
> Reich's statements appear to be merely an accommodation to the claimant.  Dr. Reich
> provides no standard by which she determines the claimant's inability to work or any
> explanation of what work she has considered.  Fourth, Dr. Reich's opinions of the claimant's
> mental status are contradicted by the claimant's personal history and treatment records, as
> well as other medical opinion of record.  A consultant for the state agency, as one example,

indicates the claimant exhibited *no signs* of psychiatric problems or mental illness (Exhibit 9F). In August 2006, the physician treating the claimant's fibromyalgia reported the claimant "was talking and was not particularly symptomatic" (Exhibit 27F, p.1).

I find, then, that while the claimant's persistent pain may limit her ability to perform more than work than involves one and two-step job instructions, she is only mildly limited in the ability to maintain social relationships. She is moderately limited in the ability to maintain concentration and in activities of daily living– and if exhibiting more than moderate limitations in activities of daily living, accepts these by personal, life-style choice rather than physical or mental necessity.

Tr. 26 (emphasis added).

A treating physician may offer an opinion about a claimant's condition and about the nature and severity of any impairments. *Castellano v. Secretary of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994). The regulations provide that the agency generally will give more weight to medical opinions from treating sources than those from non-treating sources and that the agency will give controlling weight to the medical opinion of a treating source if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. § 404.1527(d)(2). Moreover, the opinions of specialists related to their area of specialty are entitled to more weight than that of a physician who is not a specialist in the area involved. See 20 C.F.R. § 404.1527(d)(5).

Unless good cause is shown to the contrary, the Commissioner must give substantial weight to the testimony of the claimant's treating physician. If the opinion of the claimant's physician is to be disregarded, specific legitimate reasons for this action must be set forth. *Byron v. Heckler*, 742 F.2d 1232 (10th Cir. 1984). "'In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion.'" *McGoffin v. Barnhart*,

11

288 F.3d 1248, 1252 (10th Cir. 2002)(quoting *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir.

2000)).  Moreover, an ALJ may not substitute his own opinion for medical opinion.  *See Sisco*,

10 F.3d at 744.

In this case, Dr. Ryan's opinion  that "[t]here [was] no evidence of psychiatric issues or

disease" cannot serve as the basis for affording little weight to Dr. Reich's opinion.  Dr. Reich, a

psychiatrist, is considered a treating source and a specialist whereas Dr. Ryan is an internist who

examined Alyward once.  The ALJ also misconstrued the evidence.  When Dr. Cooper made the

statement, "she was talking and was not particularly symptomatic," Dr. Cooper was referring to

Alyward's response to the stress echocardiogram.  Tr. 359.  Dr. Cooper was not referring to

Alyward's state of mind or her psychological well being.  Finally, the ALJ is not allowed to make

speculative inferences or credibility judgments ("guaranteeing continued payment of the

claimant's insurance coverage"and "Dr. Reich's statements appear to be merely an

accommodation to the claimant") but must base the weight accorded to the treating physician's

opinion on the basis of contradictory medical evidence.  On remand, if the ALJ chooses to accord

limited weight to Dr. Reich's opinion she must set forth the contradictory medical evidence to

support her finding.  The ALJ must also address Dr. Reich's October 6, 2005 Supplemental

Functional Assessment (Tr. 380-382) and, if she decides to disregard it, give specific legitimate

reasons for doing so.  In that functional assessment, Dr. Reich noted Alyward was **moderately

severely impaired** (impairment significantly affects ability to function) in the following areas: (1)

ability to maintain a work pace appropriate to workload; (2) ability to perform intellectually

complex tasks requiring higher levels of reasoning, quantitative or language skills; and (3) ability

to perform under stress or situations where working speed and sustained attention are fundamental to the job.  Dr. Reich also found Alyward **moderately impaired** in several areas.

## B.  Medical Vocational Guidelines (the grids)

The grids represent the [Commissioner's] administrative notice of the jobs that exist in the national economy at the various functional levels (i.e. sedentary, light, medium, heavy, and very heavy).  *See Channel v. Heckler,* 747 F.2d 577, 579 (10th Cir. 1984).  If the ALJ's findings of fact regarding a particular individual's age, education, training, and residual functional capacity (RFC) all coincide with the criteria of a particular rule on these grids, the [Commissioner] may conclude that jobs suitable for the claimant exist in the national economy and that the claimant therefore is not disabled.  *Id.*

Because the grids classify RFC based only on exertional or physical strength limitations, they may not be fully applicable to claimants with nonexertional impairments.  *See* 20 C.F.R. 404.1567; *Channel,* 747 F.2d at 580-81.  Nonexertional impairments are medically determinable impairments, including pain, that do not directly limit physical exertion, but may reduce an individual's ability to perform gainful work nonetheless.  *Channel*, 747 F.2d at 580.

If nonexertional impairments narrow the range of possible work the claimant can perform, the [Commissioner] may only use the grids as a "framework" for determining whether, in light of all claimant's impairments, [she] has meaningful employment opportunity within the national economy.  20 C.F.R. pt. 404, subpt. P, App.2, 200 (e) (2).  In such cases, the [Commissioner] must also produce a vocational expert to testify whether specific jobs appropriate to claimant's limitations exist in the national economy.  *Channel*, 747 F.2d at 581.

13

Alyward contends the ALJ erred in conclusively applying the grids.  Alyward argues that because the ALJ found at step two of the sequential evaluation process that her fibromyalgia, depression, anxiety, degenerative disease of the spine were severe impairments she was precluded from conclusively applying the grids.  Because Alyward has nonexertional impairments (e.g., pain associated with fibromyalgia) that may reduce her ability to perform gainful work, the ALJ erred in conclusively applying the grids.  *See Sandoval v. Barnhart*, 197 Fed.Appx. 801 (10th Cir. 2006)(The ALJ's step two findings that claimant's back pain was a severe impairment made it impossible to conclude at step four that claimant's pain was insignificant.).  On remand, the ALJ should consult with a vocational expert.

**C.  Conclusion**

It is not this Court's role on appeal from this agency determination to reweigh the

evidence or to substitute its judgment for that of the Commissioner.  *See Hargis v. Sullivan*, 945

F.2d 1482, 1486 (10th Cir. 1994).  The Court's role is to review the record to ensure that the

ALJ's decision is supported by substantial evidence and that the law has been properly applied.

After such review, the Court finds the ALJ did not apply correct legal standards and her decision

is not supported by substantial evidence.  Accordingly, Plaintiff's  Motion to Reverse or Remand

Administrative Agency Decision is **GRANTED**.

A judgment in accordance with this Memorandum Opinion and Order will be entered.


_____

**DON J. SVET**
**UNITED STATES MAGISTRATE JUDGE**